FILED
2011 Aug-18 PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| KIMBERLY McKEEVER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-G-3039-J |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

The plaintiff, Kimberly McKeever, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

> (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

### THE STANDARD FOR REJECTING
### THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational

expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401.

The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 38 years old at the date of ALJ Cynthia Weaver's decision.  The ALJ found that the plaintiff has the following severe impairments: cervical and lumbar disc problems, diabetes mellitus type II and interstitial cystitis. [R. 14].  She also found the plaintiff's hypertension, depression, anxiety, obesity and left knee pain are non-severe impairments because they do not significantly affect her ability to perform work related activity.  Id.  The plaintiff initially alleged disability beginning May 10, 2006, but subsequently amended the onset date to February 18, 2008, although the ALJ did not mention this in her decision and apparently decided the case based on the earlier onset date.  The ALJ found the plaintiff could perform a reduced range of sedentary work, and based on the VE's testimony, found that she could perform her past relevant work as an office manager.

The plaintiff's attorney took the deposition of the plaintiff's treating physician, Keith Morrow, D.O., on August 5, 2009.  Dr. Morrow testified:

> Well, Ms. McKeever has a significant amount of problems for a person of her age due primarily, but not limited to, a herniated desk [sic] in her neck. She [h]as foraminal and some spinal stenosis in her low back. She has taken several different medications, but still has significant pain on a daily basis. Besides the pain in both her cervical and lumbar spine, she has multiple other problems, including a [sic] significant anxiety depression with panic disorder. She has interstitial cystitis of the bladder, which can be significantly disabling in and of itself. Complicating all her other problems she also has diabetes mellitus, which over time, as most people know, can be a significant illness.

[R. 312-13]. The deposition continued:

> Q: I noticed that she's been coming quite often since you first started seeing her in '05. And on several occasions that you'd actually written her back to work. But it appears as those [sic] there was a significant change in her condition toward the middle of February or the last part of January of 2008. And that her pain complaints worsened. And also that's when in February 18th of 2008 is when those MRI's [sic] of her cervical and lumbar spine were done. I guess what I'm alluding to, especially since that date, and with that particular corroboration, do you know of any way she could have worked at anything since February 18th of 2008?
>
> A: No. And, prior to that, she'd always be trying to go back to work. And it just reached the point with all her problems she'd just – if you get something, quote, "balanced", some else would become unbalanced kind of.

[R. 313-14]. Dr. Morrow did not see anything to indicate to him that the plaintiff is a malingerer. [R. 320].

Dr. Morrow also completed a Clinical Assessment of Pain Questionnaire in which he stated that he had treated the plaintiff on 20 to 30 occasions. [R. 379]. He checked that pain was present to such an extent as to be distracting to adequate performance of daily activities or work. Id. Walking, standing, stooping, and moving of

extremities would result in greatly increased pain to such a degree as to cause distraction from the task or even a total abandonment of the task. Id. Significant medication side effects would limit the effectiveness of work duties or the performance of such everyday tasks as driving an automobile. [R. 380]. Dr. Morrow also completed a Functional Capacity Assessment in which he thought the plaintiff could sit for two hours at one time, stand for one hour at one time and walk for one hour at one time. [R. 381]. Dr. Morrow thought the plaintiff would need to lie down and rest for one hour in an eight-hour workday. [R. 382]. He estimated the plaintiff would miss 30-40 workdays a year. Id.

The ALJ gave little weight to the opinion of Dr. Morrow:

> The Clinical Assessment of Pain and Residual Functional Assessment completed by Dr. Morrow contrasts sharply with the other evidence of record, including his own office notes which provide a longitudinal, contemporaneous treatment record for the claimant. Additionally, the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant was truly disabled. The record does not show the claimant was ever referred to a specialist for her back pain, nor does it show she ever underwent injections or any treatment for pain other than medication. It appears the doctor relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. With regard to the claimant's [sic] deposition, the doctor's "testimony" was basically elicited through the claimant's attorney, where [t]he doctor simply said yes to most of the leading and detailed questions asked by the claimant's attorney. The longitudinal medical record of the doctor's office is required to be given more weight as they are prepared contemporaneously with every visit with the patient. Although Dr. Morrow "testified" the claimant's pain was so great it caused significant pain and nerve damage, during his actual examinations and long term treatment of the claimant, he never mentioned it in his treatment notes. Therefore, while his opinion was considered, it was given little weight.

[R. 20].

The ALJ's reasons for rejecting the testimony and opinion of the plaintiff's treating physician are not supported by substantial evidence. The medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). On January 9, 2008, Dr. Morrow found a positive "SLE" (presumably straight leg extension) and positive crossed leg test, but issued a certificate to return to work. [R. 235-36]. On February 4, 2008, Dr. Morrow noted palpable spasms in the plaintiff's cervical and lumbar spine and noted the plaintiff had increased pain in her legs, feet and back which requires her to change positions frequently. [R. 229]. On February 14, 2008, he again noted a positive SLE and crossed leg tests, and spasms in her cervical and lumbar spine. [R. 226].

A February 18, 2008, MRI of the lumbar spine showed disc dessication with minimal disc bulging at L5-S1, facet and ligamentum flavum changes most significant at L3-4 leftward, L4-5 left greater than right with mild facet asymmetry at L5-S1, with the most significant degree of stenosis at L4-5 leftward. [R. 211]. That same day, an MRI of the cervical spine showed a C6-7 small central soft disc herniation, C5-6

right lateral recess and right exit foraminal stenosis with spurring, and multilevel spondylitic bar with the greatest leftward spondylosis at C3-4. [R. 212].

On March 31, 2008, the plaintiff underwent a consultative physical examination at the request of the Commissioner by Frank G. Gillis, M.D. She had a reduced range of motion in her back, and straight leg raise tests were positive bilaterally with the left greater than the right. [R. 186]. She had a normal gait with no ataxia or spasticity, and motor strength was 5/5 in both arms and legs. Id. Dr. Gillis thought that the plaintiff had moderate functional limitations because of decreased range of motion of the cervical and lumbar back. Id. A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5) The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

The Commissioner argues that while Dr. Morrow repeatedly diagnosed osteoarthritis, degenerative joint disease, joint pain and back pain, "his examinations generally documented only palpable spasms in the lumbar and cervical spines." [Comm'r's brief at 11]. This statement only lends support to Dr. Morrow's opinion that the plaintiff suffers from disabling pain. The relationship between a claimant's subjective symptoms and medical evidence is explained in Social Security Ruling 96-7p, Disability

11

Claims: Assessing the Credibility of an Individual's Statements, which contains the following:

> Symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques; <u>however, their effects can often be clinically observed</u>. The regulations at 20 CFR 404.1529(c)(2) and 416.929(c)(2) provide that objective medical evidence "is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of" an individual's symptoms and the effects those symptoms may have on the individual's ability to function. The examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from or be associated with, the symptom of pain. When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects.

SSR 96-7p at 6 (emphasis added).

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in <u>Marbury v. Sullivan</u>, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his <u>private or personal capacity</u>; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original). The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ failed to properly refute the opinion of the plaintiff's treating physician, Dr. Morrow. At the ALJ hearing, the vocational expert testified that a person

with the plaintiff's limitations as diagnosed by Dr. Morrow, including her level of pain, her need to lie down, and her absenteeism, could not perform any job that exists in the national economy. [R. 55-59].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

DONE and ORDERED 18 August 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.